IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PETER SANTOS,

    Plaintiff,

No. CIV S-10-0081 DAD

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

<u>ORDER</u>

    Defendant.

_____/

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. For the reasons explained below, plaintiff's motion is granted, defendant's motion is denied, the decision of the Commissioner of Social Security (Commissioner) is reversed, and this matter is remanded for further proceedings consistent with this order.

**PROCEDURAL BACKGROUND**

On April 26, 2005, plaintiff filed an application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act) and an application for Supplemental Security Income (SSI) under Title XVI of the Act, alleging disability beginning on November 1, 1999 due to depression, anxiety, dyslexia, paranoia and schizophrenia. (Transcript (Tr.) at 41-43.) Plaintiff's applications were denied initially on July 18, 2005, and upon reconsideration on

November 21, 2005.  (Tr. at 16, 43-54.)  A hearing was held before an Administrative Law Judge (ALJ) on May 4, 2007.  (Tr. at 178-199.)  Plaintiff was represented by counsel and testified at the hearing.  In a decision issued on October 18, 2007, the ALJ found that plaintiff was not disabled.  (Tr. at 13-22.)  The ALJ entered the following findings:

> 1. Claimant met the insured status requirements of the Social Security Act through September 30, 2000.
>
> 2. Claimant has not engaged in substantial gainful activity since November 1, 1999, the alleged disability onset date (20 C.F.R. 404.1520(b), 404.1571, *et seq*., 416.920(b) and 416.971, *et seq*.).
>
> 3. Claimant has the following severe impairments: depression and anxiety (20 C.F.R. 404.1520(c) and 416.920(c)).
>
> 4. Claimant does not have an impairment or combination of impairments that meets or medically equals the criteria of any section of the Listing of Impairments at 20 C.F.R., Part 404, Subpart P, Appendix 1 for twelve continuous months (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, I find that claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: limitation to simple repetitive tasks with no more than occasional contact with the general public.
>
> 6. Claimant is unable to perform any past relevant work (20 C.F.R. 404.1565 and 416.965).
>
> 7. Claimant was born on February 14, 1965 and was 34 years old at his alleged disability onset, and he is considered a younger individual at all times relevant herein (20 C.F.R. 404.1563 and 416.963).
>
> 8. Claimant has at least a high school education and is able to communicate in English (20 C.F.R. 404.1564 and 416.964).
>
> 9. Transferability of job skills is not an issue relevant to this decision (20 C.F.R. 404.1568 and 416.968).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform (20 C.F.R. 404.1560(c), 404.1566, 416.960(c), and 416.966).

/////

      11.  Claimant has not been under a disability, as defined in the Social Security Act, beginning at any time from November 1, 1999 through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

(Tr. at 18-22.)

On November 9, 2009, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (Tr. at 5-9.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on January 11, 2010.

## LEGAL STANDARD

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record as a whole and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Morgan, 169 F.3d at 599); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. Jones, 760 F.2d at 995. The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

/////

improper legal standard was applied in weighing the evidence, Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, Sections 404.1520 and 416.920. Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Yuckert, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff argues that the ALJ committed the following four principal errors in finding him not disabled: (1) the ALJ rejected the opinion of plaintiff's treating psychologist, Dr. Frank Upshaw, without a legitimate basis for so doing; (2) the ALJ rejected third-party statements regarding plaintiff's functional limitations without legitimate or germane reasons for

4

so doing; (3) the ALJ failed to pose a legally adequate hypothetical to the vocational expert (VE); and (4) the ALJ failed to ask the VE whether his testimony was consistent with the Dictionary of Occupational Titles (DOT) and was therefore not justified in relying upon the VE's testimony. These arguments are addressed below.

## I. The Opinion of the Treating Psychologist

The weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or nonexamining health professionals. Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant . . . ." Lester, 81 F.3d at 830. This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual. Smolen v. Chater, 80 F.3d at 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).

A treating physician's uncontradicted opinion may be rejected only for clear and convincing reasons, while a treating physician's opinion that is controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830-31. The ALJ, however, need not give weight to a treating physician's conclusory opinion supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113-14 (9th Cir. 1999) (affirming rejection of a treating physician's "meager opinion" as conclusory, unsubstantiated by relevant medical documentation, and providing no basis for finding the claimant disabled); see also Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

"The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830. An examining physician's uncontradicted opinion, like a treating physician's, may be rejected only for clear and convincing reasons, and when an examining physician's opinion is controverted by another doctor's opinion,

the examining physician's opinion may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. Id. at 830-31.  Finally, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." Id. at 831 (emphasis in original).

Here, plaintiff contends that the ALJ did not have a legitimate basis for rejecting the opinion of plaintiff's treating psychologist, Dr. Frank Upshaw.  Specifically, plaintiff argues that the ALJ improperly rejected Dr. Upshaw's May 3, 2007 opinion regarding plaintiff's ability to perform work-related activities found in the Mental Medical Assessment of Ability to do Work-Related Activities form.  Therein, Dr. Upshaw indicated that plaintiff's ability to relate to co-workers, deal with the public, deal with work stresses, function independently, and maintain attention/concentration was "poor or none."[1]  (Tr. at 173.)  In describing the medical/clinic findings supporting those assessments, Dr. Upshaw stated that a "mental status exam shows deficits in concentration, judgment, and impulse control." (Id.)  Dr. Upshaw also indicated that plaintiff's ability to understand, remember and carry out complex job instructions was likewise "poor or none." (Id. at 174.)  Dr. Upshaw found that plaintiff's "low intellectual functions" supported that assessment. (Id.)  Dr. Upshaw also concluded that plaintiff's ability to relate predictably in social situations and demonstrate reliability was "poor or none" because plaintiff's "personality is avoidant and anti-social." (Id.)

The ALJ rejected Dr. Upshaw's May 3, 2007 opinion, except to the extent it was consistent with the ALJ's own residual functional capacity (RFC) assessment that plaintiff could perform simple, repetitive work limited by occasional public contact, stating:

> Psychologist Frank Upshaw, Ph.D., began seeing claimant in conjunction with his parole from prison in December of 2005.  At that time, Dr. Upshaw diagnosed a mood disorder, NOS, and a

---

[1] A finding of "poor or none" indicates that plaintiff had "[n]o useful ability to function in this area." (Tr. at 173.)

6

       personality disorder, NOS, with a global assessment of functioning (GAF) of 65. At that time, claimant also did not request either psychotropic medication or individual psychotherapy. Exhibit B-6F/17. However, claimant subsequently reported some increased depression and anxiety for which he was prescribed Paxil. Dr. Upshaw's subsequent treatment notes indicate that claimant remained sober and was compliant with prescribed medications, with no adverse side-effects. In January of 2007, Dr. Upshaw reported that claimant "has been doing much better on the increased dose of Paxil." Exhibit B-6F/2. In a May 2007 mental functional assessment form, Dr. Upshaw indicated a "fair" ability to perform simple, repetitive tasks with "poor or none" capacity to relate to co-workers, deal with the public, deal with work stresses, function independently, maintain attention/concentration, understand, remember and carry out complex job instructions, relate predictably in social situations, and demonstrate reliability. Exhibit B-7F/2-3.

       I only credit the May 2007 opinion of Dr. Upshaw to the extent that it is consistent with the above residual functional capacity. To the extent that his opinion is more limiting and inconsistent with the above residual functional capacity, I find Dr. Upshaw's opinion to be inconsistent with his own treatment notes indicating improvement and stability with medication, and contrary to the great weight of the evidence. In sum, to the extent that Dr. Upshaw's May 2007 opinion is inconsistent with the above residual functional capacity, I find his opinion to be inordinately based upon claimant's subjective complaints, which I do not find fully credible. Further, to the extent that the lack of supporting documentation and the record as a whole contradict Dr. Upshaw's opinion, I find that he is acting more as an advocate than as an objective medical source. As discussed above, the findings and assessments as Exhibits B1F and B6F, including Dr. Shaw's (sic) own assessments, show that claimant was functioning fairly well on prescribed medication without significant s/e and had a GAF of 65, which is consistent with at least the residual functional capacity found herein, even with ongoing drug abuse through 2005 and no significant treatment.

(Id. at 19-20.)

       The administrative record demonstrates that when Dr. Upshaw rendered his opinion of plaintiff's ability to engage in work-related activities in May of 2007, he and Psychiatrist Dr. Ralph Sett had been treating plaintiff for over a year and a half. Dr. Upshaw first examined plaintiff on April 6, 2005 and diagnosed him as suffering from a "Mood Disorder NOS" and a "Personality Disorder NOS" and found that plaintiff had a GAF of 65. (Tr. at 129.)

On December 9, 2005, Dr. Upshaw again examined plaintiff and diagnosed him as suffering from "Mood Disorder NOS," and a "Personality Disorder NOS," and found that plaintiff had a GAF of 65. (Tr. at 171.) On January 12, 2006, plaintiff met with Dr. Sett who diagnosed plaintiff as suffering from "Depressive Disorder NOS R/O Schizoaffective Disorder," and "Schizotypal Personality Disorder," and found that plaintiff had a GAF of 50. (Id. at 166.) Dr. Sett prescribed plaintiff "Paxil 20 mg daily." (Id.) On January 31, 2006, Dr. Upshaw met with plaintiff and noted that he "presented today as anxious and uncertain." (Id. at 163.) Over the next year Dr. Sett repeatedly meet with plaintiff and consistently increased plaintiff's prescribed daily dose of Paxil from 20 mg daily to eventually 60 mg daily in an effort to control plaintiff's anxiety and depression. (Id. at 156-63.) During that same period of time, plaintiff regularly met with Dr. Upshaw. (Id.)

While it is true that Dr. Upshaw often noted in the treatment record that plaintiff was "doing well" and that his medication "controls his depression," none of Dr. Upshaw's brief treatment notes specifically addresses plaintiff's ability to perform work-related activities. That is not surprising since, as the Ninth Circuit has acknowledged,

> [t]he primary function of medical records is to promote communication and recordkeeping for health care personnel-not to provide evidence for disability determinations. We therefore do not require that a medical condition be mentioned in every report to conclude that a physician's opinion is supported by the record.

Orn v. Astrue, 495 F.3d 625, 634 (9th Cir. 2007). In this regard, the court finds that it is not evident that Dr. Upshaw's May 2007 opinion regarding plaintiff's ability to engage in work-related activities was inconsistent with his treatment notes.

Morever, the ALJ's assertion that in rendering his findings and conclusions regarding plaintiff's ability to engage in work-related activities Dr. Upshaw's opinion was "inordinately based upon claimant's subjective complaints" and that Dr. Upshaw was "acting more as an advocate than as an objective medical source" is baseless. (Tr. at 20.) An ALJ may consider a claimant's lack of credibility and the extent to which a physician's opinion is

influenced by the claimant's own information. Andrews v. Shalala, 53 F.3d 1035, 1040 (9th Cir. 1995). However, while the ALJ "may introduce evidence of actual improprieties," the ALJ "may not assume that doctors routinely lie in order to help their patients collect disability benefits." Lester, 81 F.3d at 832. See also Saelee v. Chater, 94 F.3d 520, 523 (9th Cir. 1996); Reddick v. Chater, 157 F.3d 715, 726-27 (9th Cir. 1998). Indeed, such "skepticism of a treating physician's credibility flies in the face of clear circuit precedent." Reddick, 157 F.3d at 726. Here, the ALJ did not point to any evidence of impropriety on the part of Dr. Upshaw. Rather, the ALJ appears to have improperly simply assumed that Dr. Upshaw's opinion was influenced by a desire to advocate on plaintiff's behalf.[2] Moreover, Dr. Upshaw stated that his opinion in May of 2007, was based, at least in part, on plaintiff's mental status exam. (Id. at 173.)

Finally, while discrediting Dr. Upshaw's May 2007 opinion regarding plaintiff's limitations, the ALJ gave "substantial weight" to the June 2005 and November 2005 opinions of the Disability Determination Services medical advisors. (Id. at 20.) In this regard, the ALJ stated:

> In arriving at the above residual functional capacity, I give substantial weight to the June and November 2005 opinions of the Disability Determination Services (DDS) medical advisors, that claimant had a residual functional capacity for simple repetitive work with no more than occasional contact with the general public (Exhibits B-2F, B-3F and B-5F), based upon the weight of the evidence. Social Security Ruling 96-6p. As noted above, the residual functional capacity found herein is consistent with that assessment.

(Id.)

The ALJ's decision on this point cites to exhibits B-2F, B-3F and B-5F in the administrative record. Exhibit B-5F is a three-page exhibit consisting of a Request For Medical

---

[2] The ALJ's assertion that Dr. Upshaw's opinion was influenced by his desire to act as plaintiff's advocate is particularly unconvincing when considered in light of the fact that Dr. Upshaw is an employee of the California Department of Corrections and Rehabilitation. (Tr. at 114, 127.) As such, it seems even more implausible that Dr. Upshaw would be improperly influenced by personal sympathies in rendering an opinion regarding plaintiff's limitations.

Advice from November 21, 2005, and a Consultation Request from July 5, 2005. (Tr. at 152-54.) The exhibit is sparse and does not appear to be of any significance. Exhibit B-2F is a Residual Functional Capacity Assessment-Mental form completed by Dr. E. Harrison on July 12, 2005. (Tr. at 130-32.) The four-page form presents twenty mental activities that must be rated. For each of the twenty activities Dr. Harrison concluded that plaintiff was either "Not Significantly Limited" or only "Moderately Limited." (Id. at 130-31.) Exhibit B-3F is a Psychiatric Review Technique Form, also completed by Dr. E. Harrison on July 12, 2005. (Id. at 134.) Within the fourteen pages of that form Dr. Harrison indicates that plaintiff has an affective disorder, a personality disorder, a mood disorder, pathological dependence, and passivity or agressivity. (Id. at 134-43.) In assessing plaintiff's functional limitations, Dr. Harrison found that plaintiff had "moderate" limitations in activities of daily living, maintaining social functioning and maintaining concentration, persistence or pace. (Id. at 144.) In this regard, it appears that Dr. Harrison reached clinical findings similar to Dr. Upshaw's regarding plaintiff's disorders and merely differed in his conclusions with respect to the degree those disorders limited plaintiff's ability to function. See Orn, 495 F.3d at 632 ("When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'").

      Dr. Upshaw was plaintiff's treating physician. "By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians." Orn, 495 F.3d at 631. See also Reddick, 157 F.3d at 725 ("The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant."). In contrast, it appears that Dr. Harrison was a non-treating, nonexamining physician. As noted above, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1202 (9th Cir. 2008) (quoting Lester, 81 F.3d at 831). In this regard, the ALJ's reliance on a form completed in 2005 by a non-treating, nonexamining

agency physician is legally flawed.  Such reliance violates the general rule that more weight should be given to the opinion of a treating source than to the opinion of a doctor who did not treat the claimant and fails to recognize that a treating doctor has a greater opportunity to know and observe the patient as an individual.

On this record, the court concludes that there was not substantial evidence in the record to support the ALJ's decision to reject treating physician Dr. Upshaw's opinions regarding plaintiff's mental limitations and his ability to engage in work-related activities.  Accordingly, the court finds that plaintiff is entitled to summary judgment on his claim that the ALJ improperly rejected the opinion of plaintiff's treating psychologist Dr. Frank Upshaw.

## II.     Third-Party Statements

The testimony of lay witnesses, including family members and friends, reflecting their own observations of how the claimant's impairments affect his activities must be considered and discussed by the ALJ.  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006); Smolen, 80 F.3d at 1288; Sprague, 812 F.2d at 1232.  Persons who see the claimant on a daily basis are competent to testify as to their observations.  Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999); Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993).  If the ALJ chooses to reject or discount the testimony of a lay witness, he or she must give reasons germane to each particular witness in doing so.  Regennitter, 166 F.3d at 1298; Dodrill, 12 F.3d at 919.  The mere fact that a lay witness is a relative of the claimant cannot be a ground for rejecting the witness's testimony.  Regennitter, 166 F.3d at 1298; Smolen, 80 F.3d at 1289.  Nor does the fact that medical records do not corroborate the testimony provide a proper basis for rejecting such testimony.  Smolen, 80 F.3d at 1289.  It is especially important for the ALJ to consider lay witness testimony from third parties where a claimant alleges symptoms not supported by medical evidence in the file and the third parties have knowledge of the claimant's daily activities.  20 C.F.R. § 404.1513(e)(2); SSR 88-13.

/////

Questions of credibility and the resolution of conflicts in the testimony are usually deemed functions solely of the Commissioner. Morgan, 169 F.3d at 599. The determination of credibility is said to be a function of the ALJ acting on behalf of the Commissioner. Saelee, 94 F.3d at 522. As a general rule, an ALJ's assessment of credibility should be given great weight. Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985). Ordinary techniques of credibility evaluation may be employed, and the adjudicator may take into account prior inconsistent statements or a lack of candor by the witness. Fair, 885 F.2d at 604 n.5.

Here, the ALJ rejected the testimony of plaintiff's step-mother and the third-party statements of plaintiff's father and sister-in-law because those statements were consistent with plaintiff's subjective complaints, which the ALJ found "not entirely credible." (Tr. at 21.) In this regard, the ALJ stated:

> Claimant's step-mother testified that he lives with her and that he forgets things such as taking his medication and that he gets angry easily. She testified that claimant does not finish his chores and does not perform tasks very well. She also testified that he goes to AA meetings and does not use illegal drugs. I find that her testimony and the report by claimant's father at Exhibit B12E essentially repeat his subjective allegations and confirm non-compliance with his prescribed medication regimen. As such, they do not enhance the credibility of claimant's subjective allegations. Similarly, I give limited weight to the third party statement from claimant's sister-in-law at Exhibit B-4E, on that same basis; I find that it generally reiterates claimant's subjective complaints. After considering the evidence of record as a whole, I find that claimant's medically determinable impairments could reasonably be expected to produce the type of alleged symptoms, but that his statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. The severity of claimant's alleged symptoms is inconsistent with the record as a whole, including the above-discussed treatment records indicating improvement and stability with prescribed medication.

(Tr. at 21.)

Once a claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged, the ALJ may not discredit the claimant's own testimony as to the severity of

his symptoms merely because the degree of severity is unsupported by objective medical evidence. Lingenfelter, 504 F.3d at 1035-36; Reddick, 157 F.3d at 722; Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). "'[T]he ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so.'" Light, 119 F.3d at 792 (quoting Smolen, 80 F.3d at 1281). See also Morgan, 169 F.3d at 599; Reddick, 157 F.3d at 722; Matthews v. Shalala, 10 F.3d 678, 679 (9th Cir. 1993) (citing Miller, 770 F.2d at 848).

In evaluating a claimant's subjective testimony regarding pain and the severity of symptoms, the ALJ may, of course, consider the presence or absence of supporting objective medical evidence along with many other factors. Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (en banc); Smolen, 80 F.3d at 1285. The ALJ may also rely in part on his own observations of the claimant. Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989). However, the ALJ cannot substitute such observations for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).

Here, the record establishes that plaintiff's medically determinable impairments could reasonably be expected to produce his symptoms of anxiety, depression, aggression, impaired memory, impaired concentration, and an inability to deal with the public. Accordingly, the ALJ was required to evaluate the intensity, persistence, and limiting effect of plaintiff's symptom to determine the extent to which they limit his ability to engage in basic work activities.

The ALJ here made findings on plaintiff's credibility, finding that plaintiff's subjective complaints were not "fully credible." (Tr. at 20.) The ALJ went on to find that the "severity of claimant's alleged symptoms is inconsistent with the record as a whole, including the above-discussed treatment records indicating improvement and stability with prescribed medication." (Id. at 21.)

The court has carefully reviewed the administrative record, including plaintiff's treatment records, and finds that the ALJ failed to provide clear and convincing reasons for

discrediting plaintiff's testimony. According to plaintiff's treatment records, on January 31, 2006, plaintiff was "anxious and uncertain." (Tr. at 163.) On February 22, 2006 his daily dosage of Paxil was increased from 20 mg to 30 mg to address his anxiety, hand tremors and excessive perspiration. (Id. at 162.) On April 13, 2006, plaintiff was prescribed Inderal to address continued hand tremors that intensified when plaintiff was in a group of people. (Id.) On January 25, 2007, plaintiff's daily dosage of Paxil was increased to 60 mg after he complained of increased anxiety and being jittery without explanation. (Id. at 156.) These treatment record is consistent with plaintiff's testimony that in response to his overwhelming anxiety it was necessary to repeatedly "up my dosage." (Id. at 184.)

Having found that the ALJ failed to provide clear and convincing reasons for discrediting plaintiff's testimony, the court notes that the ALJ's sole reason for discrediting the testimony of plaintiff's step-mother and the third-party statements of plaintiff's father and sister-in-law was because they did "not enhance the credibility of claimant's subjective allegations." (Id. at 21.) The ALJ did not give any other reasons, let alone any reasons germane to each particular witness, in rejecting their testimony.

The ALJ's decision to discredit plaintiff's testimony and the testimony and statements of the third-party witnesses is not supported by specific, clear and convincing reasons for doing so. Therefore, plaintiff is entitled to summary judgment on his claim that the ALJ failed to properly credit the third-party testimony of plaintiff's step-mother and the third-party statements of plaintiff's father and sister-in-law as to the nature and extent of plaintiff's functional limitations.

### III. Legally Adequate Hypothetical Question

Plaintiff argues that the ALJ erred by failing to pose a legally adequate hypothetical question to the VE. The court agrees.

A claimant's RFC is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a). The assessment of RFC must be "based on all the

relevant evidence in [the claimant's] case record." Id.  See also Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001).  The Commissioner may satisfy his burden of showing that the claimant can perform past relevant work or other types of work in the national economy by taking the testimony of a vocational expert.  Burkhart, 856 F.2d at 1340; Polny v. Bowen, 864 F.2d 661, 663 (9th Cir. 1988).

Here, the court has determined that the ALJ improperly discredited the opinion of Dr. Upshaw, specifically ignoring plaintiff's inability to relate to co-workers, deal with the public or deal with work stresses, and the testimony and statements of third-party witnesses that supported plaintiff's limitations in this regard.  As a result of these errors, the ALJ's hypothetical question posed to the VE failed to include the majority of the work-related limitations indicated by Dr. Upshaw.  Specifically, the ALJ's hypothetical assumed that plaintiff could perform simple, repetitive tasks with occasional contact with the public, even though treating physician Dr. Upshaw opined that plaintiff had no useful ability to deal with the public.  Based on the VE's answer to this flawed hypothetical, the ALJ concluded that plaintiff was capable of performing the jobs of packing and filling machine operator, and packing and telephone food order clerk.  (Tr. at 22.)  However, the ALJ did acknowledge at the administrative hearing that "all substantial gainful activity would be precluded" if the limitations indicated by Dr. Upshaw's opinion were taken into account.  (Id. at 198.)

Thus, the ALJ's failure to credit the opinion of Dr. Upshaw led to the erroneous exclusion of significant limitations from the hypothetical question posed and the answer relied upon by the ALJ.  See Holohan v. Massanari, 246 F.3d 1195, 1208-09 (9th Cir. 2001) (holding that the ALJ is required to question a vocational expert in a manner that properly takes into account the limitations on the plaintiff's abilities to engage in various work-related functions).  Moreover, it is evident from the VE's response to a hypothetical question that included the appropriate limitations that, when the effects of plaintiff's impairments are properly considered, there are no jobs in the national economy that he can perform. (See Tr. at 194-95, 197.)

1          Therefore, plaintiff is entitled to summary judgment on his claim that the ALJ
2   failed to pose a legally adequate question to the VE.

**IV.   ALJ's Failure to Ask The VE Whether His Testimony Was Consistent With The DOT**

         Plaintiff asserts that the ALJ failed to ask the VE whether his testimony conflicted with the DOT and that the ALJ's failure to so inquire was not harmless error because the jobs identified by the VE were inconsistent with the requirements of the DOT.  Defendant concedes that the ALJ failed to ask the VE whether his testimony conflicted with the DOT but argues that the error was nonetheless harmless because the testimony did not conflict with the DOT.

         An ALJ may not rely on a VE's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the Dictionary of Occupational Titles (DOT).  Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007).[3]  See also SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000).  If there is such a conflict, the ALJ must resolve it by determining whether the VE's explanation for the conflict is reasonable and justifies reliance on the expert's testimony rather than on the DOT.  However, the failure to make the requisite inquiry is harmless where there is no conflict or where the vocational expert's testimony provides sufficient support to justify any potential conflict.  Massachi, 486 F.3d at 1154 n.19 (failure to follow SSR 00-4p would have been harmless if there had been no conflict between the opinion and DOT); see also Renfrow v. Astrue, 496 F.3d 918, 921 (8th Cir. 2007) ("[T]he ALJ's error in failing to ask the vocational expert about possible conflicts between his testimony and the Dictionary of Occupational Titles was harmless, since no such conflict appears to exist."); Jones v. Astrue, No. 2:09-cv-03214 KJN, 2011 WL 1253727, at *10 (E.D. Cal. Mar. 31, 2011) (harmless error found where failure to ask was "inconsequential to the ultimate non-disability determination"); Miller v. Astrue, No. Civ S-08-368 KJM, 2009 WL 800227, at *4 (E.D. Cal.

---

[3]   The administrative hearing in this case was held on May 4, 2007.  The Ninth Circuit's decision in Massachi was filed shortly thereafter, on May 11, 2007.

Mar. 25, 2009) (harmless error found because "plaintiff fails to show any conflict between the DOT and the vocational expert's testimony"); Lao v. Astrue, No. Civ. S-06-2714 EFB, 2008 WL 3863698, at *11-12 (E.D. Cal. Aug. 18, 2008) ("[T]he ALJ's failure to inquire about the conflict was harmless because there was no conflict[.]").

Here, plaintiff argues that the VE testified that plaintiff would be able to perform jobs requiring only simple, repetitive tasks, but then identified jobs that required a level 2 reasoning level, which according to the DOT requires more then the performance of simple, repetitive tasks. Plaintiff contends that only jobs that required a level 1 reasoning level were consistent with his assessed ability to perform simple, repetitive tasks.

"Numerous courts in this District and elsewhere have rejected the argument made by Plaintiff here, to wit, that a limitation to simple, repetitive tasks is inconsistent with Level 2 reasoning ability and is consistent, at most, with Level 1 reasoning." Salazar v. Astrue, No. EDCV 07-00565-MAN, 2008 WL 4370056, at *7 (C.D. Cal. Sept. 23, 2008). See also Tudino v. Barnhart, No. 06-CV-2487-BEN (JMA), 2008 WL 4161443, at *11 (S.D. Cal. Sept. 5, 2008) ("Level-two reasoning appears to be the breaking point for those individuals limited to performing only simple repetitive tasks."); Isaac v. Astrue, No. CIV S-07-0442 GGH, 2008 WL 2875879, at *3-4 (E.D. Cal. July 24, 2008) (finding that limitation to simple job instructions is consistent with Level 2); Squier v. Astrue, No. EDCV 06-1324-RC, 2008 WL 2537129, at *5 (C.D. Cal. June 24, 2008) ("Plaintiff's limitation to simple, repetitive tasks is not inconsistent with the ability to perform jobs with a reasoning level of two."); Flaherty v. Halter, 182 F. Supp.2d 824, 850 (D. Minn., 2001) (finding that level 2 reasoning requirement did not conflict with ALJ's limitation that plaintiff perform simple, repetitive tasks).

Here, while the ALJ failed to inquire of the VE whether his testimony conflicted with the DOT, that error was harmless because the VE's testimony did not in fact conflict with the DOT for the reasons noted above. Therefore, plaintiff is not entitled to summary judgment in his favor on this ground.

**CONCLUSION**

The decision whether to remand a case for additional evidence or to simply award benefits is within the discretion of the court. Ghokassian v. Shalala, 41 F.3d 1300, 1304 (9th Cir. 1994); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990). The Ninth Circuit Court of Appeals has stated that, "[g]enerally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed." Ghokassian, 41 F.3d at 1304 (citing Varney v. Sec'y of Health & Human Servs., 859 F.2d 1396, 1399 (9th Cir. 1988)). This rule recognizes the importance of expediting disability claims. Holohan, 246 F.3d at 1210; Ghokassian, 41 F.3d at 1304; Varney, 859 F.2d at 1401.

Here, plaintiff filed his applications for DIB and SSI over six years ago. The ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of November 1, 1999. (Tr. at 18.) Moreover, when the opinion evidence of plaintiff's treating physician is given the proper weight, the evidence of record demonstrates that plaintiff was disabled when Dr. Upshaw evaluated him on May 3, 2007. Indeed, the ALJ acknowledged at the hearing that if the limitations reflected by treating physician Dr. Upshaw in his opinion were credited "all substantial gainful activity would be precluded[.]" (Tr. at 198.) Thus, the ALJ incorrectly found that plaintiff had not been under a disability at any time from November 1, 1999 through October 17, 2007. However, while it is clear that plaintiff was under a disability as of May 3, 2007, it is not clear from the administrative record before the court if the date of onset is May 3, 2007, or sometime prior thereto.[4] See Luna v. Astrue, 623 F.3d 1032, 1035 (9th Cir. 2010) (affirming remand to determine onset date where ALJ did not address the issue and evidence in the record did not establish onset date); Regennitter, 166 F.3d at 1300 (finding claimant disabled but remanding for determination of onset date); Armstrong v. Commissioner,

---

[4] As noted above, plaintiff alleged on onset date of disability of November 1, 1999.

160 F.3d 587, 590 (9th Cir. 1998) (Where, after reviewing the record, the court found it unclear when the claimant's disabilities became disabling the case was remanded with instruction to determine when the claimant became disabled)

Accordingly, the court will remand the matter for further administrative proceedings consistent with this order and solely for the limited purpose of determining the correct date of onset of plaintiff's disability.  See Widmark v. Barnhart, 454 F.3d 1063, 1065 (9th Cir. 2006) (reversing and remanding for proceedings consistent with the court's decision that the ALJ improperly rejected an examining physician's opinion).

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's November 4, 2010 motion for summary judgment (Doc. No. 20) is granted;

2. Defendant's December 6, 2010 cross-motion for summary judgment (Doc. No. 22) is denied;

3. The decision of the Commissioner of Social Security is reversed; and

4. This case is remanded for further proceedings consistent with this order.

DATED: August 31, 2011.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:6
Ddad1/orders.socsec/santos0081.order